IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.

CASE NO. 4:07-cr-65-RH-GRJ

JONATHAN DAVID DUKE,

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 89, a *pro se* motion to vacate pursuant to

28 U.S.C. § 2255.  The motion stems from Defendant's conviction, after a bench trial, to

one count of using interstate commerce to induce a minor to engage in sexual activity,

in violation of 18 U.S.C § 2422(b), and one count of traveling in interstate commerce for

the purpose of engaging in sexual activity with a minor, in violation of 18 U.S.C.

§ 2423(b), for which he received a sentence of 120 months imprisonment.  The

Government filed a response in opposition to the motion to vacate, and Defendant filed

a reply. (Docs. 103, 106.)  Upon due consideration of the motion, the response, and the

Defendant's reply, the undersigned recommends that the motion to vacate be denied.[1]

## Background

The charges against Defendant were based on an investigation conducted by

the Leon County Sheriff's Office, called "Operation Traveling Man."  As part of this

investigation, Detective Melinda McBride posed as a thirteen-year-old girl on a Yahoo

---

[1]Upon review of the record and the parties' submissions, the Court concludes that no evidentiary hearing is warranted in this case.  *See* Rule 8, Rules Governing Motions Under § 2255.

chat room called "Georgia Romance." Detective McBride chatted with Defendant, who represented himself as thirty-four years old, and discussed meeting face-to-face in Tallahassee. When Defendant arrived at the agreed location in Tallahassee, he was arrested and a condom was found in his wallet. Defendant was indicted on one count of using interstate commerce to induce a minor to engage in sexual activity, and one count of traveling in interstate commerce for the purpose of engaging in sexual activity with a minor. Prior to the trial, Defendant's counsel requested that Defendant undergo a competency evaluation. (Doc. 27.) After receiving the evaluator's report, the Court held a hearing on April 11, 2008 and determined that Defendant was competent to stand trial. (Doc. 59.) Neither party objected to the determination of Defendant's competency.

Also on April 11, 2008, Defendant filed a written waiver of his right to trial by jury. (Doc. 35.) The district judge conducted an extensive colloquy with Defendant regarding this waiver, and at the conclusion of the hearing found that Defendant "knowingly, voluntarily, and intelligently waived his right to a jury trial." (Doc. 59, at 13.) The bench trial was conducted on June 23, 2008, and Defendant was found guilty of both counts. (Docs. 45, 61.) Defendant was sentenced on September 4, 2008 to the mandatory minimum 120 months' imprisonment on both counts, to run concurrently, followed by ten years of supervised release. (Doc. 50.) Michael Ufferman, Defendant's appointed appellate counsel, filed a brief to the Eleventh Circuit pursuant to *Anders v. California*, 386 U.S. 738 (1967), in which he stated that he could not in good faith raise any argument on appeal. The Eleventh Circuit affirmed the conviction and sentence, finding after "independent examination of the entire record" that there were "no arguable issues

of merit." (Doc. 75.)

In the instant motion to vacate, Defendant asserts nine grounds for relief. In Ground One, Defendant asserts that the conviction violated his First Amendment rights because he did not "knowingly" interact with a child. In Ground Two, Defendant asserts that his conviction was the result of police entrapment. Ground Three claims that the police violated Defendant's *Miranda* rights and coerced his confession. In Ground Four, Defendant asserts that "vindictive prosecution" occurred at his bond hearing. Ground Five asserts that the government interfered in Defendant's attorney-client relationship with Mr. William Clark, Defendant's appointed trial counsel. In Ground Six, Defendant claims that the government suppressed key evidence in his trial. Ground Seven also appears to be a prosecutorial misconduct claim. Ground Eight asserts ineffective assistance of trial counsel based on counsel's alleged failure to present additional evidence at the bench trial and counsel's alleged dislike of Defendant. In Ground Nine, Defendant asserts ineffective assistance of counsel claims pertaining to Grounds One through Seven. (Doc. 1.)

### Standard of Review

A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded the court's jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. "Relief under 28

U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). Further, disposition of a claim of error on direct appeal precludes further review in a subsequent collateral proceeding. *See, e.g., Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).

Defendant's specific claims are set forth in the memorandum submitted with his motion to vacate.  In the memorandum the claims are presented as substantive claims of error, although Defendant also contends in Claim Eight that his trial counsel rendered ineffective assistance for failing to raise such claims.  Claims that were not presented on appeal are procedurally barred absent a showing of cause and prejudice sufficient to overcome the procedural bar.  *See United States v. Frady*, 456 U.S. 152, 167-68. Defendant appears to assert ineffective assistance of counsel as cause for his failure to raise claims that should have been raised on appeal, and in that context the court will review the merits of his substantive claims.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).

The prejudice prong of *Strickland* focuses on whether the trial was unreliable or fundamentally unfair due to counsel's deficient performance. *Strickland*, 466 U.S. at 687. Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of a constitutionally protected right. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000). To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

## Claim One: First Amendment

Defendant appears to argue that his conviction on Counts One and Two violated his First Amendment rights because the government failed to prove that he "knowingly" enticed a minor to engage in sexual activity and "knowingly" traveled to meet a minor to engage in sexual activity. Defendant claims that he believed that he was chatting

online with an adult, and that at some point he believed he was chatting with a police officer.  (Doc. 89, at 7.)  Defendant also asserts in his motion, however, that after speaking with the police officer posing as a minor, he "believed for the first time that he was actually dealing with a 13-year-old child."  *Id.* at 9.

Defendant failed to raise this claim on direct appeal, and the claim would generally be considered procedurally defaulted.  *See Frady*, 456 U.S. at 167-68.  To the extent that Defendant argues that he received ineffective assistance from his appellate counsel that justified his failure to raise the claim on appeal, the claim fails on the merits because Defendant has failed to allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief."  *Aron v. United States*, 291 F. 3d 708, 715 n.6 (11th Cir. 2002).

Defendant essentially argues that the district court should have credited his testimony at trial that he did not believe that he was chatting with a minor, and should have discredited the testimony of Detective McBride.  The district court addressed this precise issue at Defendant's sentencing, in response to Defendant's objection to receiving a two-point enhancement for obstruction of justice based on his willfully false testimony during the trial.  In overruling the objection and applying the enhancement, the district judge noted that Defendant "denied intent to have a sexual relationship with the fictitious victim.  He testified that he wished to meet at a public place, and that he intended to counsel her.  My finding is to the contrary."  (Doc. 62, at 7.)  Defendant's argument in Claim One is vague and conclusory, and presents no basis for relief under § 2255.

## Claim Two: Police Misconduct/ Entrapment

Defendant asserts that his conviction was the result of unlawful entrapment. He alleges that he was aware that he was chatting with a police officer on the Yahoo chatroom, and that he "attempted to diffuse the Melissa Anderson issue" by asking Detective McBride to "leave him alone." (Doc. 89, at 13.) Defendant asserts that Detective McBride re-initiated contact with him via instant message, and that he then asked Detective McBride to call him. After speaking with the officer impersonating a thirteen-year-old, Defendant asserts that he believed that he had actually spoken with a child. He alleges that the officers were coercive in this telephone call, and that the conduct of the officers, taken as a whole, constituted entrapment.

Defendant failed to raise this claim on direct appeal, and the claim would generally be considered procedurally defaulted. *See Frady*, 456 U.S. at 167-68. To the extent that Defendant argues that he received ineffective assistance from his appellate counsel that justified his failure to raise the claim on appeal, this claim fails on the merits.

> The affirmative defense of entrapment "applies when a person not predisposed to commit a crime is induced to do so by the government." *United States v. Sistrunk*, 622 F. 3d 1328, 1332 (11th Cir.2010), cert. denied, 131 S. Ct. 1529 (2011). There are two elements to an entrapment defense: "(1) government inducement of the crime; and (2) lack of predisposition on the part of the defendant." *Id.* at 1333. The defendant bears the initial burden of production of evidence of government inducement; once he meets that burden, the government must prove beyond a reasonable doubt that he was predisposed to commit the crime. *Id.* When the jury rejects a defendant's entrapment defense, our review is limited to "whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction." *United States v. Padron*, 527 F. 3d 1156, 1159 (11th Cir. 2008).

*United States v. Leightey*, 432 F. App'x 836, 838 (11th Cir. 2011). In support of his

argument that the government's conduct constituted entrapment, Defendant offers only

that the officer that he spoke with over the telephone was "coercive." (Doc. 89, at 15.)

He asserts that the transcript of the telephone call was not introduced into evidence,

and that the audiotape of the telephone call was "inaudible." *Id.* Defendant appears to

argue that the evidence of entrapment would be found on these ostensibly missing

recordings. However, there is no indication in the record that the audio recordings of

the telephone calls were inaudible. Rather, it appears that there was initially a volume

issue with playing the recording in the courtroom, and that this issue was resolved and

the recordings were successfully played. (Doc. 61, at 63-64.) After the recordings were

played, neither defense counsel, the U.S. Attorney, nor the district judge mentioned any

issues with the quality of the recording.

Defendant offers no specific support for his entrapment claim apart from his

conclusory statements about the recordings of his telephone calls with the officers. He

presents no evidence to demonstrate that he was not predisposed to commit the

offense. "Unsubstantiated and conclusory allegations are insufficient to establish

constitutional violations that will support granting a motion to vacate." *Collins v. United

States*, 481 F. App'x 525, 528 (11th Cir. 2012) (citing *United States v. Jones*, 614 F. 2d

80, 81-82 (5th Cir. 1980). Accordingly, this claim presents no basis for relief under §

2255.

## Claim Three: *Miranda* Violations

Defendant argues that after his arrest, he was coerced by police "into signing

Miranda documents after repeatedly expressing his concern for legal representation."

(Doc. 89, at 18.) Defendant asserts that the police officers told him that "Melissa

Anderson" was a real thirteen-year-old, and that her mother had contacted the police

after discovering the online chat. Defendant says that he "did not believe a police

officer (Agent Buscomb) would lie," and that he wrote a letter of apology to "Melissa's"

mother at the suggestion of the officer. Defendant asserts that his "fear and deep

sorrow for the situation played into the hands of his interrogators." *Id.* at 19. Defendant

asserts that the officers' conduct during his interrogation violated his Fifth Amendment

rights.

Defendant failed to raise this claim on direct appeal, and the claim would

generally be considered procedurally defaulted. *See Frady*, 456 U.S. at 167-68. To the

extent that Defendant argues that he received ineffective assistance from his appellate

counsel that justified his failure to raise the claim on appeal, this claim fails on the

merits.

> The government cannot introduce a suspect's statement taken
> without the presence of an attorney without first showing that the suspect
> made a voluntary, knowing, and intelligent waiver of his *Miranda* rights.
> *Hart v. Att'y Gen. of Florida,* 323 F. 3d 884, 891 (11th Cir.2003) (citing
> *Miranda* [*v. Arizona*]*,* 384 U.S. 436, 475 [(1966)]. . . .
> The inquiry into whether a waiver was voluntary, knowing, and
> intelligent is twofold, or, stated another way, "has two distinct dimensions."
> *Moran v. Burbine,* 475 U.S. 412, 421 (1986). First, the waiver must be
> "voluntary in the sense that it was the product of a free and deliberate
> choice rather than intimidation, coercion, or deception." *Id.; accord Hart,*
> 323 F.3d at 892 (quoting *Burbine,* 475 U.S. at 421). Second, the waiver
> must be "made with a full awareness of both the nature of the right being
> abandoned and the consequences of the decision to abandon it." *Hart,*
> 323 F.3d at 892 (quoting *Burbine,* 475 U.S. at 421, 106 S.Ct. at 1141).
> Even if a defendant's statement is voluntary and not coerced, the
> "prosecution must make the additional showing that the accused
> understood these [ *Miranda*] rights." *Thompkins,* 130 S.Ct. at 2262; *see
> Burbine,* 475 U.S. at 421–22, 106 S.Ct. at 1141.

*Hall v. Thomas*, 611 F. 3d 1259, 1285 (11th Cir. 2010). The Eleventh Circuit has

"reject[ed] a *per se* rule that statements obtained by police deception must be

suppressed." *United States v. Farley*, 607 F. 3d 1294, 1328 (11th Cir. 2010) (citing

*United States v. Castaneda-Castaneda*, 729 F. 2d 1360, 1363 (11th Cir. 1984)). In

*Farley*, the circuit court held that the defendant's waiver of his *Miranda* rights was valid

despite the fact that the police misrepresented the subject matter of the investigation.

The police in that case told the defendant that they wanted to question him as part of a

terrorism investigation, when in reality he was suspected of enticing a minor to engage

in sexual activity and traveling to meet a minor to engage in sexual activity. The court

stressed that even if police tricks are ethically objectionable, "they are not relevant to

the constitutional validity of a waiver unless they interfere with the defendant's 'ability to

understand the nature of his rights and the consequences of abandoning them.'" *Id.* at

1330 (quoting *Moran*, 475 U.S. at 423-24).

Defendant has presented no specific facts in support of his argument that the

police trickery here—the officer's telling Defendant that "Melissa's" mother had

contacted the police after finding evidence of the online chat—was of constitutional

significance. Agent Julius Saldanha testified that he read Defendant his *Miranda* rights

and paused after each line to obtain Defendant's signature. (Doc. 61, at 81-82). Agent

Saldanha stated that he spent half an hour to forty-five minutes explaining the nature of

the *Miranda* rights to Defendant. *Id.* at 92. Defendant has presented no evidence that

he did not understand the nature of his *Miranda* rights after this extensive explanation,

and only conclusory arguments that his waiver was coerced. Accordingly, this claim

presents no basis for relief under § 2255.

## Claim Four: Vindictive Prosecution

Defendant asserts that the government engaged in "vindictive prosecution"

during the pretrial stage, by presenting the apology letter that Defendant wrote to

"Melissa's" mother to the magistrate judge at the pretrial hearing and bond hearing.

Defendant asserts that the government argued to the magistrate judge that Defendant

was a danger to the community and a suicide risk, and that these factors influenced the

magistrate judge's decision to deny bond. Defendant claims that the magistrate judge's

denial of bond interfered with his ability to assist in his defense and caused his family to

suffer.

Defendant failed to raise this claim on direct appeal, and the claim would

generally be considered procedurally defaulted. *See Frady*, 456 U.S. at 167-68. To the

extent that Defendant argues that he received ineffective assistance from his appellate

counsel that justified his failure to raise the claim on appeal, this claim fails on the

merits because Defendant has failed to allege "reasonably specific, non-conclusory

facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F. 3d 708, 715

n.6 (11th Cir. 2002).

The Eleventh Circuit has recognized that "[a]s a general rule, as long as the

prosecutor has probable cause to believe the accused has committed a crime, the

courts have no authority to interfere with a prosecutor's decision to prosecute." *United

States v. Watson*, 400 F. App'x 442, 445 (11th Cir. 2010) (quoting *United States v.

Barner*, 441 F. 3d 1310, 1315 (11th Cir. 2006)). Where, as here, there is no

presumption of vindictiveness, "the defendant has the burden of demonstrating actual

vindictiveness." *Id.* (citing *Barner*, 441 F. 3d at 1317, 1322). Defendant has offered

only unsubstantiated and conclusory allegations in support of this claim, and has

pointed to no specific facts that would support a finding that the government engaged in

vindictive prosecution at his bond hearing.  Accordingly, this claim presents no basis for relief under § 2255.

### Claim Five: Interference with Attorney-Client Relationship

While the nature of this claim is not entirely clear from Defendant's brief, it appears that Defendant asserts that his trial counsel Mr. Clark shared confidential information about his trial strategy with the government, and that this act constituted improper government interference in the relationship between Defendant and his counsel.

Defendant failed to raise this claim on direct appeal, and the claim would generally be considered procedurally defaulted.  *See Frady*, 456 U.S. at 167-68.  To the extent that Defendant argues that he received ineffective assistance from his appellate counsel that justified his failure to raise the claim on appeal, this claim fails on the merits because Defendant has failed to allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief."  *Aron v. United States*, 291 F. 3d 708, 715 n.6 (11th Cir. 2002).

Defendant appears to argue that the Assistant United States Attorney, Mr. Mountain, called Mr. Clark to discuss stipulations in the case, and that during this phone Mr. Clark told him that the defense would emphasize the telephone calls between Defendant and "Melissa," the thirteen-year-old girl.  Defendant asserts that until the conversation with Mr. Clark, the government was "either not aware of the existence of this phone call or was aware and wanted it covered up."  (Doc. 89, at 28.)  Nothing in the record supports Defendant's argument that his trial counsel revealed confidential trial strategy.  Defendant's trial counsel submitted a letter to the government denying

that he shared trial preparation with the government, and stating that he did "discuss and agree to stipulations prior to trial and Mr. Duke was fully informed of all discussions [Mr. Clark] had with the prosecutor." (Doc. 103-1, at 2.) Similarly, no evidence supports Defendant's argument that the government was unaware of the telephone calls between Defendant and "Melissa" or was attempting to conceal those calls. Detective McBride and Agent Duffey testified at trial that an officer impersonating "Melissa" had spoken with Defendant on the telephone, and that those calls were recorded. (Doc. 61, at 49, 61-62.) Indeed, the government introduced recordings of those calls into evidence. *Id.* at 61-62. Accordingly, this claim presents no basis for relief under § 2255.

## Claim Six: Prosecutorial Suppression of Evidence

Defendant asserts that the government "suppressed" the following exculpatory evidence: 1) the video recording of Defendant's interrogation, 2) Defendant's Verizon cell phone, and 3) the data extracted from the cell phone.

Defendant failed to raise this claim on direct appeal, and the claim would generally be considered procedurally defaulted. *See Frady*, 456 U.S. at 167-68. To the extent that Defendant argues that he received ineffective assistance from his appellate counsel that justified his failure to raise the claim on appeal, this claim fails on the merits because Defendant has failed to allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F. 3d 708, 715 n.6 (11th Cir. 2002).

As Defendant acknowledges, each of the challenged items were admitted into evidence by the government. (Doc. 61, p. 190, 71, 98.) Defendant appears to argue

that because the government did not actually play the recording of his interrogation in the courtroom or present all the data from his cell phone, it "suppressed" the evidence. But the government was under no obligation to present evidence in the manner preferred by Defendant. Accordingly, Defendant is not entitled to relief on this claim.

## Claim Seven: Prosecutorial Misconduct

While the nature of this claim is not entirely clear from Defendant's brief, Defendant appears to argue that the government witnesses engaged in "misrepresentation of evidence," apparently because the testimony of those witnesses was inconsistent with Defendant's own testimony. (Doc. 89, at 40.) Defendant failed to raise this claim on direct appeal, and the claim would generally be considered procedurally defaulted. *See Frady*, 456 U.S. at 167-68. To the extent that Defendant argues that he received ineffective assistance from his appellate counsel that justified his failure to raise the claim on appeal, this claim fails on the merits because Defendant has failed to allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F. 3d 708, 715 n.6 (11th Cir. 2002). Defendant's argument is repetitive of Claims One and Two, and accordingly this claim presents no grounds for relief under § 2255.

## Claim Eight: Ineffective Assistance of Counsel

Defendant asserts that his trial counsel was constitutionally ineffective for three reasons: 1) Mr. Clark did not personally like Defendant; 2) Mr. Clark's advice for Defendant to be candid in his psychiatric evaluation "damaged" Defendant, because Defendant was not aware that the results of the evaluation would be sent to the Court; and 3) Mr. Clark failed to present exculpatory evidence during the bench trial. (Doc. 89,

at 47.)

Defendant's first argument, that his trial counsel was ineffective because he disliked Defendant and believed him to be a "liar," is unavailing. *Id.* at 45. The performance prong of *Strickland* requires the Court to evaluate whether Defendant's counsel fell below an objective and reasonable professional norm. *Strickland*, 466 U.S. at 686. Counsel's subjective feelings towards his client are not relevant to this analysis, as an attorney is not required to feel personal affection towards a client in order to perform in a reasonable and professional manner. Defendant has also failed to demonstrate that if Mr. Clark had personally liked him more, the outcome of the trial would have been different. Accordingly, Defendant has failed to establish both the performance and prejudice prongs of *Strickland* with respect to this claim.

Defendant next argues that Mr. Clark's advice to be candid in his psychiatric evaluation was deficient. Defendant asserts that he did not understand that the results of his psychiatric evaluation would be sent to the Court, despite the fact that it was Defendant's motion for a mental examination that prompted the Court to order the evaluation. (Docs. 27, 28.) Even assuming *arguendo* that Mr. Clark did not tell Defendant that the evaluation would be sent to the Court, Defendant acknowledges that "[t]his fact was explained to the defendant by Dr. Feldman," who performed the evaluation. (Doc. 89, at 47.) Accordingly, Defendant is unable to demonstrate that Mr. Clark's advice to be candid in his evaluation caused him any prejudice, either in the evaluation itself or at trial. Defendant is not entitled to relief on this claim.

Finally, Defendant asserts that Mr. Clark failed to present exculpatory evidence at trial. Defendant argues that after his first chat with "Melissa," he told the other

members of the Yahoo chat room that he knew that there were Florida police officers in

the chat room.  He argues that this was evidence that he thought that "Melissa" was a

law enforcement officer, not a thirteen-year-old girl.  Defendant asserts that Mr. Clark

could have subpoenaed a record of this chat from Yahoo, but failed to do so because "it

would produce discovery for the prosecution to use against the defendant and that the

Yahoo Corporation may not be able to provide the chat information."  (Doc. 89, at 50.)

Defendant has presented no evidence to indicate that this was not a reasonable

decision on the part of Mr. Clark.  Mr. Mountin, the prosecutor, stated to the Court that

> the Yahoo instant messaging service, as it relates to data that can be
> recovered off of the computer, doesn't archive the messages themselves.
> So, there is no way of knowing of those 2100 times that he logged on
> using that [username] what screen or what type of chat room it was or
> what the content of that chat was, other than the chats that you have
> before you, which were saved only because they were saved on the
> receiving end by the law enforcement officers.

(Doc. 61, at 201.)  Defendant has presented no specific facts in support of the

proposition that Mr. Clark could have obtained the records of this chat from Yahoo.

Given the fact that Defendant had used the Yahoo chat services hundreds of times, Mr.

Clark's decision not to subpoena chat records from Yahoo also appears to be a

reasonable professional decision, because those records could have included more

incriminating documents that then would have been available to the government.

Furthermore, Defendant's argument that the outcome of his trial might have been

different had the Yahoo records been available is entirely speculative, given the

overwhelming evidence against him in the form of his chats and phone calls with

"Melissa," and the fact that he did in fact travel to "Melissa's" home.  Because

Defendant is unable to establish both the performance and prejudice prongs of

*Strickland*, he is not entitled to relief on this claim.

Defendant next alleges that Mr. Clark failed to call "business associates, personal friends, and family physicians who would corroborate everything he would later testify to." (Doc. 89, at 50.) Defendant presents no specific facts in support of this speculative and conclusory statement, and fails to provide any detailed information about what the purportedly exculpatory unnamed witnesses would have testified. Under *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Defendant has also failed to provide facts in support of his allegation that if these witnesses had testified, the outcome of the trial might have been different. Accordingly, Defendant is unable to establish both the performance and prejudice prongs of *Strickland* and is not entitled to relief on this claim.

Finally, Defendant alleges that Mr. Clark failed to call an "actual alibi witness," an unnamed woman from Thomasville, Georgia who was a "chat buddy" of Defendant. (Doc. 89, at 50.) Defendant claims that this witness could have testified that Defendant asserts that Mr. Clark contacted this witness by mail and telephone, but she "denied knowing the defendant at all." *Id.* at 52. Defendant has presented no specific facts to demonstrate that Mr. Clark's failure to call this witness was unreasonable. Given that the individual denied even knowing Defendant, calling her as a witness at best would have been irrelevant and at worst could have been extremely harmful. Defendant has offered only speculation in support of the argument that calling this witness would have changed the outcome of the case. Accordingly, he is unable to establish both the performance and prejudice prongs of *Strickland* and is not entitled to relief on this claim.

**Claim Nine: Ineffective Assistance of Counsel on Claims One through Seven**

Defendant asserts ineffective assistance of counsel claims based on the substantive arguments he presents in Claims One through Seven: 1) that Mr. Clark should have demonstrated that he did not "knowingly" chat with a minor by presenting additional evidence; 2) that Mr. Clark failed to argue that Defendant was entrapped; 3) that Mr. Clark failed to play a recording of Defendant's interrogation; 4) that Mr. Clark was present at the bond hearing at which the government "vindictively prosecuted" Defendant but failed to object; 5) that Mr. Clark shared his confidential trial strategy with the government; 6) that Mr. Clark facilitated the government's "suppression" of evidence by failing to play recordings of the telephone calls between Defendant and "Melissa;" and 7) that Mr. Clark facilitated prosecutorial misconduct by failing to object when the prosecutor played a recoding of the telephone call.

In support of this claim, Defendant presents only unsubstantiated and conclusory arguments that are insufficient to demonstrate that Mr. Clark's performance fell below an objective and reasonable professional norm. Defendant offers no specific factual support for the argument that if Mr. Clark had performed adequately, the outcome of the trial would have been different. For these reasons and for the reasons stated in the discussion of Claims One through Seven, Defendant has failed to establish both the performance and prejudice prongs of *Strickland* and is not entitled to relief on this claim.

**Certificate of Appealability**

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to vacate, Doc. 89, be **DENIED**, and that a COA be **DENIED**.

**IN CHAMBERS** this 10th day of January 2013.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**